101 F.3d 107
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,
v.
DREXEL BURNHAM LAMBERT INCORPORATED; Drexel Burnham Lambert
Group Inc.; Michael R. Milken; Lowell J. Milken; Cary J.
Maultasch; Pamela R. Monzert; Steven N. Posner;
Pennsylvania Engineering Corporation, Defendants,
Victor Posner, Defendant-Appellant.
 No. 95-6217.
 United States Court of Appeals, Second Circuit.
 March 8, 1996.
 
 APPEARING FOR APPELLANT: Jay P. Lefkowitz, Kirkland & Ellis, Washington, DC.
 APPEARING FOR APPELLEE: Leslie E. Smith, Securities and Exchange Commission, Washington, DC.
 PRESENT: HON. ROGER J. MINER, HON. DENNIS G. JACOBS, HON. JOSE A. CABRANES, Circuit Judges.
 
 
 1
 UPON CONSIDERATION of this appeal from an order of the United States District Court for the Southern District of New York, it is hereby
 
 
 2
 ORDERED, ADJUDGED, AND DECREED that the order be and it hereby is AFFIRMED.
 
 
 3
 This cause came on to be heard on the transcript of record and was argued by counsel.
 
 
 4
 Defendant-appellant Victor Posner appeals from an order entered on June 30, 1995 in the United States District Court for the Southern District of New York (Pollack, J.). The district court ordered that, as to all proposed transactions involving Salem Corporation ("Salem") that require shareholder approval, the trustee holding Posner's shares is to vote those shares proportionately without any interference from Posner.
 
 
 5
 In 1988, plaintiff-appellee Securities and Exchange Commission ("SEC") brought a civil enforcement action against Posner and several others, alleging that they had violated the federal securities laws. Specifically, the SEC charged that Posner had participated in a scheme to fraudulently purchase a controlling stock interest in Fischbach Corporation ("Fischbach").
 
 
 6
 Following a bench trial, the district court found that Posner had violated various provisions of the securities laws. SEC v. Drexel Burnham Lambert Inc., 837 F.Supp. 587 (S.D.N.Y.1993). The court found that Posner had committed these violations with a "high degree of scienter," id. at 611, and that Posner in the past had "repeatedly abused [his] positions in public companies, engaged in self-dealing, [and] enriched [himself] at the expense of public shareholders," id. at 606. The district court found that "[t]here is every reason to believe that, absent further injunctive and ancillary relief, [Posner] will continue to abuse [his] positions as officers and directors of public companies to engage in future violations." Id. at 611.
 
 
 7
 Accordingly, in addition to ordering Posner to disgorge the compensation paid to him by Fischbach, the district court ordered that Posner be barred from serving as an officer or director of any public company. The district court further ordered that Posner's shares in any public companies in which he owns a controlling interest be placed in a trust. The court stated that "[p]lacing the shares [Posner] own[s] in such companies in a voting trust will divest [him] of control, and thereby give added assurance of compliance, without depriving [him] of the economic value of [his] shares." Id. at 615. The court stated that the voting trust order "will expressly provide that [Posner] retain[s] the right to sell or pledge the stock held in the trust at any time," and that his right to vote stock that he owns in a company that he controls "shall be restored upon that company's ceasing to be a reporting company under the federal securities laws." Id. at 616. On December 29, 1993, the district court entered a Final Judgment as to Posner, which provided that a Voting Trust Order thereafter would be entered.
 
 
 8
 On appeal, we affirmed the judgment of the district court. SEC v. Posner, 16 F.3d 520 (2d Cir.1994), cert. denied, 115 S.Ct. 724 (1995). In regard to his claim that the officer and director bar should be vacated, we stated that "[t]he court has broad equitable power in this area," and that "[w]e intend our affirmance of Judge Pollack's judgment in this respect as a sharp warning to those who violate the securities laws that they face precisely such banishment." Id. at 521-22.
 
 
 9
 Following the submission of letters from Posner and the SEC to the district court, the district court entered the Voting Trust Order on March 2, 1994. George H. Heyman, Jr., was appointed to serve as Trustee. The Voting Trust Order provided:
 
 
 10
 [I]n respect of any proposal other than the election of directors submitted by a Reporting Company whose Securities are subject to the Trust to the holders of such Securities or submitted by a third party for their vote ..., the Trustee shall instruct the Custodian to vote the Trust Securities ... in proportion to the votes ... of the other holders of such Securities who cast votes for or against the proposal.... Provided that, the Trustee, in his sole discretion, upon consideration of the purposes for the Final Judgment, ..., on 10 days advance written notice to the Court, the Securities Exchange Commission and the Certificate holders, and unless otherwise ordered by the Court, may ... depart from the proportionate voting provisions ... in any manner he deems necessary to act in accordance with those purposes.
 
 
 11
 In November of 1994, Salem, a company in which Posner has a controlling interest, put itself up for sale. In May of 1995, Salem gave five potential purchasers a draft plan of merger for a proposed transaction. Salem set June 30, 1995 as the deadline for final bids.
 
 
 12
 By letter dated June 26, 1995, the Trustee advised the district court that if a merger proposal were made for Salem, the Trustee likely would follow Posner's instructions in regard to voting on a merger, unless otherwise instructed by the court. Copies of this letter were provided to the SEC and Posner's counsel. On the same day, the SEC sent a letter to the district court opposing the Trustee's proposed course of action. The district court scheduled a meeting for the following day, June 27, 1995. Posner's counsel did not attend the meeting, because he claimed only to have received notice of the meeting on that same day. The district court did not make a decision at the end of the June 27th meeting. Instead, during the next few days, the court conducted telephone conversations with Posner's counsel and the SEC, and Posner's counsel was given an opportunity to express his views.
 
 
 13
 On June 30, 1995, the district court entered an order (the "1995 Order") instructing "that as to Salem, and with respect to all proposed transactions that require shareholder approval ... [t]he Trustee has, in all cases, the right and the duty to vote Victor Posner's shares proportionately, which Victor Posner may not question." The district court also ordered that "Posner continues to retain the right to bid for himself or to make his own offer with respect to any such transaction." This appeal followed.
 
 
 14
 Posner argues that the district court abused its discretion in entering the 1995 Order. We disagree. A court may rely on its "general equitable powers to fashion appropriate relief for violations of the federal securities laws." Posner, 16 F.3d at 521 (quotation omitted). In Posner, we affirmed the district court's judgment, and held that the relief ordered by the court "was within the court's well-established equitable power." Id. at 522. The district court's 1995 Order restricting Posner's right to vote on merger proposals for Salem is entirely consistent with the district court's decision in Drexel Burnham Lambert Inc. and our affirmance of that decision in Posner. It was the intent of the district court to prevent Posner from voting his shares on proposals requiring shareholder approval, such as the cash merger proposals that the Trustee indicated might be made for Salem. Moreover, Posner's contention that the 1995 Order effects an economic forfeiture of his interest is without merit. The 1995 Order does not deprive Posner of the right to sell his shares, but only deprives him of the right to vote. In fact, the Voting Trust Order defined "Economic Interest" as "any interest in Trust Securities other than the right to vote Trust Securities and the shared power to dispose of Trust Securities granted to the Trustee hereunder." Accordingly, the district court properly exercised its discretion in entering the 1995 Order.
 
 
 15
 Posner also argues that the district court's 1995 Order violates the Excessive Fines Clause of the Eighth Amendment by effecting a forfeiture of his property rights. We reject this contention. The 1995 Order does not impose any economic fine or penalty on Posner, but only prevents him from voting. Posner also contends that the 1995 Order has deprived him of his property rights without adequate notice or hearing, in violation of his rights under the Due Process Clause of the Fifth Amendment. This contention is meritless. The 1995 Order only restricts Posner's ability to vote and does not prevent him from selling his shares. We also note that, prior to the district court's entry of the 1995 Order, the court conducted a series of telephone conversations with Posner's counsel and the SEC, which provided Posner's counsel with the opportunity to voice his concerns.